FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Jan 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOELLE HERRERA B., | NO:  2:20-CV-274-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Joelle Herrera B.[1], ECF No. 15, and the Commissioner of Social Security ("Commissioner"), ECF No. 18.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of her claim for Social Security Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

Security Act (the "Act"). *See* ECF No. 15 at 1.[2]  Having considered the parties'

motions, the administrative record, and the applicable law, the Court is fully

informed.  The Court finds that the ALJ erroneously treated Plaintiff's subjective

symptoms testimony and the opinions of Plaintiff's provider and examining

psychological consultant, and, therefore, grants in part Plaintiff's motion and

remands for further proceedings.

## BACKGROUND

### *General Context*

Plaintiff applied for DIB and SSI on approximately March 14, 2017, when she

was 46 years old.  Administrative Record ("AR")[3] 19, 177–84.  Plaintiff alleged a

disability onset date of February 9, 2017, and maintained that she was unable to

function and/or work due to fibromyalgia, chronic back and neck pain, bipolar

---

[2] Plaintiff's Motion for Summary Judgment indicates that she is appealing the
Commissioner's "administrative decision, which denied Plaintiff's application for
Social Security Disability Insurance Benefits (DIB)."  ECF No. 15 at 2.  However,
Plaintiff proceeds to recite that her SSI application was denied initially, on
reconsideration, and by the ALJ after a hearing.  *Id.*  Moreover, the ALJ's decision
does not refer to DIB benefits and indicates only that Plaintiff is not disabled for
purposes of her application for SSI.  ECF No. 13 at 17, 30.  In light of the
ambiguity of Plaintiff's Motion and the content of the ALJ's decision, the Court
considers Plaintiff's Motion for Summary Judgment to address both SSI and DIB
benefits.

[3] The AR is filed at ECF No. 13.

disorder, borderline personality disorder, binge eating disorder, and obsessive compulsive disorder.  AR 211.  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  AR 109, 139.

On November 9, 2018, Plaintiff appeared at a hearing, represented by counsel Nicholas D. Jordan, before Administrative Law Judge ("ALJ") Eric Basse in Seattle, Washington.  AR 37.  Plaintiff responded to questions from ALJ Basse and counsel. The ALJ also heard telephonically from Vocational Expert ("VE") Mark Harrington, who responded to questions from the ALJ and Plaintiff's counsel.

Plaintiff stated at her hearing that she graduated from high school and completed approximately one year of college.  Around February 9, 2017, Plaintiff recalled that she quit her part-time job at a Ross department store because she was experiencing pain in her hands, arm, head, neck, and back from lifting and putting away items.  She was also experiencing an eating disorder.  Plaintiff stated that she quit because she was missing so much work.  Shortly after quitting, Plaintiff was in a car accident.  Apart from sporadic volunteer work, Plaintiff has not worked since February 2017.

Having recently experienced a period of homelessness, Plaintiff was living on her own in a small apartment paid for by her parents at the time of the hearing. Although Plaintiff maintains a driver's license, she does not own a vehicle.

Plaintiff's parents provide her rides for errands and to church, but they are advancing in age.

Plaintiff stated that she was continuing to struggle with an eating disorder until just prior to the hearing, as well as ongoing hand, wrist, and lower arm pain, social anxiety, and symptoms of bipolar disorder. Plaintiff was hospitalized in a psychiatric ward on three occasions years before relevant period. Around the time of the hearing, Plaintiff was treating her hand and wrist pain with topical pain relief and chiropractic care and her mental health symptoms with medication and counseling. AR 50–60.

The ALJ posed several hypothetical scenarios for the VE to consider in determining whether there are jobs available that Plaintiff could perform. AR 70–75. The ALJ first asked the VE to consider an individual of Plaintiff's age and education, without any past relevant work, who has no physical exertional restrictions, is capable of simple, routine tasks with simple instructions, and can be in the vicinity of but not required to interact with the public. In this first scenario, the ALJ further limited the hypothetical worker to a simple, routine, and predictable work environment without a fast production pace. The VE responded that a worker with those restrictions could perform medium-level unskilled work as a janitor or laundry worker and light-level unskilled work as an electrical accessories assembler. AR 71.

1    The ALJ posed a second hypothetical with light work and frequent handling

2    and fingering, bilaterally, as well as the same limitations described in the first

3    hypothetical.  The VE postulated that the same jobs previously listed still would be

4    available.  AR 72.

5    Third, the ALJ asked the VE whether all of the other limitations previously

6    included with frequent handling and fingering bilaterally changed to occasional

7    handling and fingering bilaterally.  The VE responded the limitation of occasional

8    handling and fingering bilaterally, combined with the other limitations, "would

9    disallow any jobs at the light level."  AR 72.

10    Fourth, the ALJ returned to the second hypothetical, which included frequent

11    handling and fingering bilaterally and other limitations, and added a limitation of

12    lifting and carrying only up to ten pounds.  The VE responded that three examples of

13    work are suitable for the fourth hypothetical individual at the sedentary level of

14    unskilled work: table worker, touch-up screener, and taper.  AR 73.

15    Lastly, the ALJ asked the VE how up to two unscheduled absences per month

16    from work and difficulty concentrating or remaining on-task due to mental health

17    issues or pain would affect the employability of a person with the other

18    characteristics previously outlined.  The ALJ opined that the absenteeism would be

19    disqualifying for sustainable employment, and being off-task ten percent or more of

20    the work time also would be disqualifying.  AR 73–74.

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 5

1    ***ALJ's Decision***

2    On May 15, 2019, ALJ Basse issued an unfavorable decision.  AR 17–30.

3    Applying the five-step evaluation process, ALJ Basse found:

4    **Step one:** Plaintiff had not engaged in substantial gainful activity since March

5    14, 2017, the application date.  AR 19.

6    **Step two:** Plaintiff had the following severe impairments that are medically

7    determinable and significantly limit her ability to perform basic work activities:

8    depression/bipolar affective disorder, personality disorder, and eating disorder

9    (bulimia).  AR 19.  With respect to fibromyalgia, the ALJ found:

> [A] diagnosis of fibromyalgia is not enough to determine that it is a medically determinable impairment. The evidence must show that the claimant has a history of widespread, bilateral body pain and axial skeletal pain that has persisted for at least three months. In addition, there must be evidence that either (a) a physician conducted a physical examination of the claimant, which includes testing the claimant's tender point sites, with at least 11 positive tender point sites or (b) there must be repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. Finally, there must also be evidence that the physician ruled out other physical or mental disorders that could cause the symptoms or signs. (SSR 12-2p).
>
> While the record does not clearly establish, via objective medical evidence from an acceptable medical course (such as a physician) that these criteria exist, in viewing the evidence in a light most favorable to the claimant, the undersigned finds the claimant's fibromyalgia to be a medically determinable impairment. However, as discussed above, the record does not establish that this impairment causes more than minimal limitation in the claimant's ability to perform basic work activities, and as such, it is nonsevere.

AR 20.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 6

1    **Step three:** The ALJ concluded that Plaintiff's mental impairments,

2    considered singly and in combination, did not meet or medically equal the severity

3    of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20

4    C.F.R. §§ 416.920(d), 416.925, and 416.926).  AR 20.  In reaching this conclusion,

5    the ALJ found that Plaintiff does not meet the "paragraph B" criteria of having at

6    least one extreme or two marked limitations in a broad area of functioning to meet

7    the relevant mental impairment listings 12.04, 12.06, 12.08, and 12.13.  AR 20.

8    Specifically, the ALJ found Plaintiff mildly limited in understanding, remembering,

9    or applying information; moderately limited in concentrating, persisting, or

10   maintaining pace; and mildly or "nor more than moderately" limited in adapting or

11   managing oneself.  AR 20–21.  The ALJ further found that Plaintiff, alternatively,

12   does not meet the "paragraph C" criteria of having a minimal capacity to adapt to

13   changes to her environment or new demands.  AR 22.

14   **Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had

15   the RFC to: perform a full range of work at all exertional levels but with the

16   following nonexertional limitations:

17   [T]he claimant can perform simple, routine tasks with short, simple
     instructions.  The general public can be present, but there can be no
18   requirement that the claimant interact with the general public as part of
     her job tasks.  The claimant has no difficulty interacting with coworkers
19   and supervisors.  The claimant needs a stable, routine, and predictable
     work environment and should not be required to perform fast-paced
20   production work.

21

AR 22.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed.  AR 23.

**Step four:** The ALJ found that Plaintiff does not have past relevant work.  AR 29.

**Step five:** The ALJ first found that Plaintiff has a high school education, can communicate in English, and has no past relevant work.  AR 29.  The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience, and RFC.  AR 29–30.  Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff would be able perform with the RFC: janitor, laundry worker, electrical accessories assembler, and sub assembler.  AR 30.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act at any time since the March 14, 2017, the date on which Plaintiff filed her application.  AR 30.

The Appeals Council denied review.  AR 5.

/ / /

/ / /

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 8

1          **LEGAL STANDARD**

2          ***Standard of Review***

3          Congress has provided a limited scope of judicial review of the

4    Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

5    Commissioner's denial of benefits only if the ALJ's determination was based on

6    legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

7    993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

8    determination that a claimant is not disabled will be upheld if the findings of fact are

9    supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

10   1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

11   but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10

12   (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).

13   Substantial evidence "means such evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

15   (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may

16   reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348

17   F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole,

18   not just the evidence supporting the decisions of the Commissioner.  *Weetman v.*

19   *Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

20

21

1    A decision supported by substantial evidence still will be set aside if the

2    proper legal standards were not applied in weighing the evidence and making a

3    decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

4    1988).  Thus, if there is substantial evidence to support the administrative findings,

5    or if there is conflicting evidence that will support a finding of either disability or

6    nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

7    812 F.2d 1226, 1229–30 (9th Cir. 1987).

8    ***Definition of Disability***

9    The Social Security Act defines "disability" as the "inability to engage in any

10    substantial gainful activity by reason of any medically determinable physical or

11    mental impairment which can be expected to result in death or which has lasted or

12    can be expected to last for a continuous period of not less than 12 months."  42

13    U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined

14    to be under a disability only if his impairments are of such severity that the claimant

15    is not only unable to do his previous work, but cannot, considering the claimant's

16    age, education, and work experiences, engage in any other substantial gainful work

17    which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A). Thus, the

18    definition of disability consists of both medical and vocational components.  *Edlund*

19    *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

20    / / /

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 10

***Sequential Evaluation Process***

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); see also 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the

claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering his residual functional capacity and age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously find Plaintiff's fibromyalgia to be medically determinable but nonsevere?

2.      Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?

3.      Did the ALJ improperly reject the medical opinion evidence?

4.      Did the ALJ erroneously formulate Plaintiff's RFC, resulting in harmful error at step five?

## DISCUSSION

### *Fibromyalgia*

Plaintiff argues that the ALJ erred in finding that there was no objective evidence to support that Plaintiff's impairment due to fibromyalgia is severe.  ECF No. 19 at 4.  Plaintiff argues that the ALJ's finding demonstrates a lack of understanding for the way that fibromyalgia presents, through "history and the presence of other factors or markers" without an ability to diagnose the condition through imaging or lab tests.  *Id.*

The Commissioner responds that the ALJ did not err because he found fibromyalgia to be a medically determinable impairment despite the lack of objective evidence and "'viewing the evidence in the light most favorable to the claimant.'"  ECF No. 18 at 8 (quoting AR 20).  The ALJ then determined that there were no objective findings to support that Plaintiff's fibromyalgia significantly limits her ability to perform basic work activities.  *Id.*  Furthermore, the ALJ did not deny Plaintiff's claim at Step Two and was required to consider all of Plaintiff's impairments, including impairments from fibromyalgia that are not severe, in

determining Plaintiff's RFC. *Id.* at 9 (citing SSR 96-8p, available at 1996 WL 374184, at *5). Therefore, the Commissioner argues, even if there were error at Step Two, Plaintiff has not shown that the error prejudiced the outcome of the ALJ's decision. *Id.* at 9–10.

The ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment that is nonsevere. AR 20. Given that the ALJ found Plaintiff's fibromyalgia to be a medically determinable impairment, any error at Step Two is harmless so long as the ALJ took into account the impairment in formulating Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to address an impairment at Step Two was harmless where the ALJ considered the effects of the impairment at Step Four in determining the claimant's RFC).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's claims that her impairments and symptoms limit her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, remember, and use her hands. AR 22. If the ALJ's consideration of Plaintiff's nonsevere and severe impairments for purposes of her RFC was flawed, the error occurred later than Step Two. Therefore, the dispositive issue is not whether the ALJ erred in characterizing Plaintiff's fibromyalgia as nonsevere, but whether the ALJ properly evaluated the evidence and testimony concerning fibromyalgia during later steps and properly factored the effects of that

condition into the RFC.  Finding any error at Step Two regarding fibromyalgia

harmless, the Court denies summary judgment to Plaintiff on this issue.  The Court

refrains from determining whether this issue favors summary judgment for the

Commissioner until resolving whether the ALJ erred in formulating the RFC.

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ did not give adequate reasons for rejecting her

subjective symptom statements.  Plaintiff contends that the ALJ improperly

discredited her symptom statements based on her daily activities when those

activities are not transferable to a work setting.  ECF No. 15 at 9–10.  With respect

to her mental health, Plaintiff argues that the ALJ erred in relying on a treatment

record that Plaintiff "presented with 'normal mood and affect and active and alert.'"

Plaintiff stresses that the chart notes before and after the quoted note refer to

Plaintiff's ongoing depression, bipolar condition, and eating disorder, and by nature

these conditions are "inherently unstable." *Id.* at 10–11 (quoting AR 23, 377).

Plaintiff asserts that the record as a whole supports her claim that she is physically

and mentally impaired to a degree that she cannot sustain employment.

The Commissioner responds that the ALJ relied on substantial evidence in

finding that Plaintiff's testimony was inconsistent with the evidence and Plaintiff's

range of activities.  ECF No. 18 at 4.  The ALJ noted that the record contained

normal physical examinations that did not corroborate Plaintiff's complaints of

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 15

physical limitation. *Id.* (citing AR 23). The Commissioner argues that Plaintiff does not meaningfully rebut the record materials that indicate that Plaintiff performed normally on numerous physical examinations, even after her car accident three months into the alleged disability period, and in many examinations Plaintiff was not observed to be in acute distress. *Id.* (citing AR 377, 380–81, 490–92, 500–01, 506, 509, and 514). The Commissioner argues that the ALJ reasonably found this material to cast doubt over Plaintiff's claims of physical debilitation. *Id.* The Commissioner further maintains that the ALJ similarly reasonably relied on normal mental examinations to partially discredit Plaintiff's claims of debilitating mental health issues. In support, the Commissioner cites the Court to: exam notes from early and mid-2017 and December 2018 indicating that Plaintiff's mood and affect were normal; therapy notes from 2017 and 2018 indicating Plaintiff was able to actively engage in behavioral health counseling; and records indicating that Plaintiff has treated her mental health issues conservatively throughout the relevant period with counseling and oral medication, without any long-term hospitalizations or severe complications. *Id.* at 5–6 (citing AR 301–42, 355–72, 377, 465–71, 481, 485, 540–49, 656–77, 614, and 616).

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). First, the ALJ must determine whether the claimant has

1    presented objective evidence of an underlying impairment that "'could reasonably be

2    expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v.*

3    *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks

4    omitted).  The claimant must show only that the impairment could reasonably have

5    caused some degree of the symptom, not necessarily the degree of symptom alleged.

6    *Id.*

7        If the claimant satisfies the first step, and there is no evidence of malingering,

8    "'the ALJ can reject the claimant's testimony about the severity of her symptoms

9    only by offering specific, clear and convincing reasons for doing so.'"  *Lingenfelter*,

10   504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

11   As to the second step, "[t]he clear and convincing standard is 'not an easy

12   requirement to meet' and it 'is the most demanding standard required in Social

13   Security cases.'"  *See Wells v. Commissioner*, No. 1:17-cv-00078-SKO, 2017 U.S.

14   Dist. LEXIS 135332, 2017 WL 3620054, at *6 (E.D. Cal. Aug. 23, 2017) (quoting

15   *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).  "General findings are not

16   enough.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted).

17   "[R]ather, the ALJ must identify what testimony is not credible and what evidence

18   undermines the claimant's complaints."  *Id.*; *see, e.g.*, *Vasquez v. Astrue*, 572 F.3d

19   586, 592 (9th Cir. 2009) ("To support a lack of credibility finding, the ALJ [is]

20   required to 'point to specific facts in the record which demonstrate that [the

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 17

claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))).

The ALJ noted that Plaintiff alleged mental health symptoms including "extreme mood swings, difficulty sleeping, difficulty managing stress, difficulty handling changes in routine, difficulty managing her emotions, and difficulty regulating her eating" and physical symptoms that "limit her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, remember, and use her hands[.]"  AR 23.  The ALJ acknowledged that Plaintiff's medically-determinable impairments could reasonably be expected to cause some degree of the alleged symptoms.  AR 23.  The ALJ did not find that Plaintiff was malingering.  Accordingly, the ALJ was required to provide specific, clear, and convincing reasons to discount Plaintiff's complaints.

Among other findings, the ALJ noted Plaintiff's conservative treatment of her mental health issues through medication and counseling and found that with more faithful adherence to her medication regimen, Plaintiff's mental health symptoms improved.  AR 23 ("The record further shows that by May 2017 (which was within one year of the claimant's alleged onset date), the claimant was adhering to her medication more consistently and was doing significantly better.").  Although the ALJ does not cite to the record for this finding, citations provided by the Commissioner in its Motion for Summary Judgment support that around May 2017,

1    Plaintiff initially did not closely adhere to the medication regimen prescribed to

2    address her most recent episode of binge eating and bipolar disorders.  AR 672–73.

3    By May 31, 2017, treatment notes indicate that Plaintiff had been "adhering

4    correctly to the medication treatment prescribed two weeks ago" and had

5    "significantly improved[.]"  AR 485.

6          The Ninth Circuit has recognized that both fibromyalgia and Plaintiff's mental

7    health symptoms are by their nature fluctuating conditions.  *See Smith v. Saul*, 820 F.

8    App'x 582, 585 (9th Cir. 2020) ("Bipolar disorder is a condition that is notably

9    episodic and does not manifest every day."); Soc. Sec. Ruling 12-2p, 2012 SSR

10   LEXIS 1 (July 25, 2012, 2012 WL 3104869, at *5 (recognizing that symptoms of

11   fibromyalgia can "wax and wane so that a person may have 'bad days and good

12   days.'").  Moreover, the Ninth Circuit recently observed that an ALJ's findings that

13   a claimant retained a "full range of motion" and "muscle tone" and showed little

14   "objective evidence of dysfunction" were not clear and convincing reasons for

15   discounting the claimant's testimony as to the severity of her fibromyalgia

16   symptoms.  *Smith v. Saul*, 820 F. App'x 582, 584 (9th Cir. 2020).  The ALJ's

17   findings that Plaintiff exhibited "normal motor strength and tone, normal bones and

18   muscles" at the outset of the relevant period closely mirror the findings rejected by

19   the Ninth Circuit panel.  AR 23; *see Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir.

20

21

2017) ("What is unusual about [fibromyalgia] is that those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal.").

Indeed, the record that the Commissioner relies on to show that Plaintiff's mental health symptoms had improved was preceded five days earlier by a provider note from group therapy recording that Plaintiff displayed a restricted affect and anxious mood. *See* AR 676; *see also* AR 693 (indicating depressed mood arriving at appointment three months later, in August 2017). The ALJ also noted in the transcript that Plaintiff was teary during the hearing, and the treatment records documenting improvement with medication do not specify whether Plaintiff's symptoms resolved or merely improved from their presentation during Plaintiff's winter 2017 acute episode. *See* AR 74, 485. An ALJ is entitled to discount a claimant's credibility where treatment is conservative in comparison to the alleged severity of the symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("According to agency rules, 'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.'") (quoting SSR 96-7p, 1996 SSR LEXIS 4). However, other than to note that Plaintiff does not use as assistive device to walk, sit, or stand, and that Plaintiff has not required hospitalizations or experienced severe complications during the relevant period, the

ALJ did not identify what more rigorous treatment might have been available to Plaintiff or otherwise specify how her treatment approach was conservative.  *See* AR 24.

The ALJ, in addition, found that Plaintiff's daily activities are inconsistent with the degree of impairment that she alleges from her mental and physical symptoms.  AR 24–25.  Daily activities can amount to a clear and convincing reason to discount a claimant's testimony if the claimant spends a substantial part of the average day performing functions that are transferrable to a work setting.  *Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999).  Specifically, the ALJ found that the record shows that Plaintiff leaves her residence for shopping, visiting friends, going to church, and attending medical appointments and is able to live by herself, do light cleaning, use a phone and the internet, respond to questions from healthcare providers, and complete forms.  AR 25.

The ALJ particularly focuses on claimant's maintenance of a driver's license because:

> It is notable that the claimant is able to drive a car, in that driving a car typically requires an individual bend their body, use their legs and feet to operate pedals such as a clutch pedal, brake pedal, and/or fuel pedal, and to reach, handle, and finger with regard to the steering wheel, windshield wipers lever, turn signal lever, and other levers, dials, and knobs as needed. Apart from these physical requirements, driving also requires an individual to have the mental wherewithal and ability to focus, concentrate, multitask, and divide their attention between observing the road conditions, staying in the appropriate lane, following applicable speed limits and driving laws, paying attention to

1

2

traffic signals and other vehicles, monitoring their vehicle's fuel level, and making sometimes fast decisions with regard to when to speed up, slow down, brake, turn, and use various interior levers for turning on and off lights, turn signals, and windshield wipers.

3

AR 25.

4

5

However, the ALJ does not cite to any testimony or other material in the

6

record supporting that Plaintiff spends any part of her day driving, much less a

7

substantial part of the day, as Plaintiff stated that she maintains a driver's license but

8

does not have a car and relies on others for rides.  AR 45, 64.  The claimant also

9

testified that she frequently cancels outings and takes breaks from performing light

10

cleaning after approximately ten minutes of effort and also has days where she does

11

not perform any tasks to take care of the apartment.  AR 61–62, 65.  The ALJ's

12

findings with respect to Plaintiff's activities of daily living do not amount to a clear

13

and convincing reason because there not a finding that any actions that Plaintiff

14

consistently performs are transferable to a work setting.

15

The Court finds that some, but not all, of the ALJ's reasons for discrediting

16

Plaintiff's statements are invalid.  Therefore, the Court must assess whether the

17

ALJ's reliance on those reasons was harmless error.  *Carmickle v. Commissioner*,

18

533 F.3d 1155, 1162 (9th Cir. 2008).  The ALJ did not provide clear and convincing

19

reasons for discounting either Plaintiff's complaints regarding her mental health or

20

physical impairments on the basis of any of Plaintiff's daily activities.  Had

21

Plaintiff's complaints been fully credited and included in her RFC, the ALJ may

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 22

1    have found Plaintiff disabled, particularly in light of the VE's testimony that there

2    are not jobs available for Plaintiff with more than two absences per month, more

3    than ten percent off-task behavior, or with a limitation of occasional handling and

4    fingering bilaterally.  AR 72–74.  Therefore, the Court cannot determine that the

5    ALJ's errors were harmless.

6         ***Medical Opinion Evidence***

7         As an initial matter, the Court notes that Plaintiff filed her claims for DIB and

8    SSI before new rules governing the evaluation and weighing of medical evidence

9    went into effect on March 27, 2017.  *See Revisions to Rules Regarding the*

10   *Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017).  In light of

11   Plaintiff's March 14, 2017, DIB application and February 9, 2017 alleged disability

12   onset date, the Court applies the prior rules.

13        Plaintiff argues that the ALJ improperly rejected the opinions of her treating

14   and examining providers physician's assistant Allie Ivanowicz[4], Washington State

15   Department of Social and Health Services psychological consultant R.A. Cline, and

16   chiropractor Chris Krueger.

17

18

19   ───────────────
     [4] The ALJ's opinion spells this provider's name as "Ivanowitz," but treatment
20   records and the Physical Functional Evaluation Form indicate that her surname is
     "Ivanowicz."  *See* AR 343–46.

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 23

When evaluating medical opinion evidence, "[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ must accord more weight to a treating physician's opinion than an examining physician's, and an examining physician's opinion carries more weight than a non-examining, reviewing, or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must articulate "specific and legitimate" reasons to reject the opinion of a consultative acceptable medical source.

However, under the regulations that apply to Plaintiff's claim, as it was filed before March 27, 2017, a physician's assistant and chiropractor are not "acceptable medical sources" for purposes of according controlling weight to his or her opinions. 20 C.F.R. §§ 404.1527, 416.913(a). While an ALJ must consider and evaluate all medical evidence, along with the remaining record, the ALJ may reject the opinions of these other medical sources for "germane reasons," rather than the higher standard of "specific and legitimate reasons" applied to the opinions of acceptable medical sources. 20 C.F.R. § 404.1513(a) (version in effect prior to Jan. 18, 2017). Nevertheless, the Social Security Administration has long recognized that other medical sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 24

psychologists," and their opinions can demonstrate the "severity and functional

effects, along with the other relevant evidence in the file."  SSR 06-03p, 2006 SSR

LEXIS 5, 71 Fed. Reg. 45593, 45595 (Aug. 9, 2006).  In addition, "depending on the

particular facts in a case, . . . an opinion from a medical source who is not an

'acceptable medical source' may outweigh the opinion of an 'acceptable medical

source,'" and "[a]n opinion from a 'non-medical source' who has seen the claimant

in his or her professional capacity may, under certain circumstances, properly be

determined to outweigh the opinion from a medical source, including a treating

source."  *Id*. at 45596.

A reviewing court should affirm an ALJ's findings where they are "supported

by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir. 2012).

<u>PAC Ivanowicz</u>

The ALJ gave little weight to the February 2017 opinion by Plaintiff's treating

Physician's Assistant, Ms. Ivanowicz, that Plaintiff is limited to sedentary work,

lifting ten pounds maximum and frequently lifting or carrying lightweight articles,

and walking or standing only for brief periods.  AR 345.  The ALJ discounted Ms.

Ivanowicz's opinion on the basis that it was inconsistent with the October 2017

opinion of a state agency medical consultant and acceptable medical source, Christy

Ulleland, M.D., who examined Plaintiff's medical records and concluded that she

1    has no medically determinable physical impairments diagnosed by an acceptable

2    medical source and lasting, or expected to last, for 12 or more continuous months.

3    AR 26.

4         The Commissioner argues that substantial evidence supports the ALJ's

5    evaluation of Ms. Ivanowicz's opinion because Ms. Ivanowicz "largely relied on

6    Plaintiff's subjective complaints to reach a conclusion that was inconsistent with

7    other evidence and [Plaintiff's] activities."  ECF No. 18 at 10.

8         As the Court noted above, there is not substantial evidence in the record to

9    support that Plaintiff engages in the activities of daily living, such as driving,

10   household cleaning, and shopping, to the extent that the ALJ found.  These activities

11   were a primary reason for discounting Ms. Ivanowicz's opinion.  *See* AR 26.

12   Furthermore, the Commissioner asserts that "[t]he fact that no other medical source

13   assessed similar limitations provided support to the ALJ's reasoning that PAC

14   Ivanowicz over-relied on Plaintiff's report." However, as Ms. Ivanowicz offers the

15   only opinion in the record from a provider who treated Plaintiff for physical

16   complaints, the Court does not find over-reliance on Plaintiff's self-report to be the

17   only possible explanation for Ms. Ivanowicz's opinion.  Furthermore, the ALJ

18   himself acknowledged that viewing the record as a whole in light most favorable to

19   Plaintiff, the record supports that that Plaintiff suffers fibromyalgia-related physical

20

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 26

1   symptoms.  AR 20.  The Court finds that the ALJ did not provide germane reasons

2   for discounting Ms. Ivanowicz's opinion.

3              R.A. Cline, Psy.D.

4          The ALJ gave mixed weight to opinions by psychological consultant Dr.

5   Cline, who examined Plaintiff and reviewed her records.  AR 28.  Specifically, the

6   ALJ gave little weight to Dr. Cline's opinion that Plaintiff's impairments and

7   symptoms have a marked effect on her ability to communicate and perform

8   effectively in a work setting, maintain appropriate behavior in a work setting, and

9   complete a normal workday and workweek without interruptions from

10  psychologically-based symptoms.  AR 28.

11         Plaintiff asserts that Dr. Cline's assessment is supported by treatment records

12  supporting that Plaintiff has limitations in the areas identified by Dr. Cline and a

13  discernable pattern in chart notes from 2016 of Plaintiff doing well and then being

14  absent.  ECF No. 15 at 14 (citing AR 616, 620, 621, 624–33).

15         The Commissioner responds that the inconsistency of Dr. Cline's marked

16  limitation opinion with the evidence of Plaintiff's daily activities in the record is a

17  specific and legitimate reason for the ALJ to reject it.  ECF No. 18 at 13.

18         Again, reviewing the record in this matter, the Court finds that the ALJ's

19  opinion overstates the independence with which Plaintiff undertakes daily activities

20  and overstates the extent that Plaintiff performs many of the activities, independently

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 27

or at all, on an average day.  As Plaintiff recites in her reply brief, Plaintiff "initially lived in a shelter with other women and children" and later in the relevant period moved into an apartment paid for by her parents, who drive her to go grocery shopping, to the hearing in this matter, and to church.  ECF No. 19 at 6 (citing AR 44–25, 219); *see also* AR 46.

The Court does not find Plaintiff's daily activities to be a specific and legitimate reason to discount Dr. Cline's opinion.

<u>Chris Krueger, D.C.</u>

Plaintiff argues that the ALJ failed to assign weight to the opinions of Plaintiff's treating chiropractor, Chris Kruger, "who found objective evidence to support the severity of the claimant's physical condition."  ECF No. 15 at 14 (citing AR 301–43, 395–471, and 505–605).  Plaintiff asserts that the ALJ specifically should have addressed Dr. Krueger's examination findings that Plaintiff had functional limitations from her cervical to lumbar spine, with increased symptoms with prolonged sitting and standing.  *Id.* at 15 (citing AR 575, 579, and 582).

The Commissioner argues that there were no specific limitations to which Dr. Krueger opined, and, therefore, there was no opinion from Dr. Krueger requiring evaluation by the ALJ.  ECF No. 18 at 11.

The materials cited by Plaintiff constitute chart notes by Dr. Krueger from appointments in March through June 2018.  AR 575, 579, and 582.  As Plaintiff has

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 28

not identified any opinion by Dr. Krueger that the ALJ rejected, the Court does not

find error on this ground, and merely considers the chart notes as part of the

longitudinal treatment record as a whole.

### RFC Formulation

As the Court has found harmful error in the ALJ's evaluation of Plaintiff's

subjective symptom statements and other medical source opinions, the formulation

of the RFC necessarily is affected.  Had the ALJ credited some of the discounted

statements and opinions, physical limitations may have been included in Plaintiff's

RFC.  Accordingly, the Court need not conduct a separate analysis with respect to

error in the RFC formulation.

### Remedy

The Ninth Circuit Court of Appeals has held that "[a] district court may

reverse the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing, but the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or

explanation."  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (quotations

omitted).  A court should take the exceptional step of remanding for an immediate

award of benefits only where:

> (1) The ALJ has failed to provide legally sufficient reasons for rejecting
> . . . evidence [probative of disability], (2) there are no outstanding issues
> that must be resolved before a determination of disability can be made,

and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation omitted).  By contrast, remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  Even if these requirements are met, the court retains "flexibility" to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Garrison*, 759 F.3d at 1021.

The Court does not find that the record as a whole compels a finding that Plaintiff is disabled or that the credit-as-true factors have been satisfied.  Further administrative proceedings would be able to further develop the record with respect to whether Plaintiff's subjective complaints should be accepted and how the opinion evidence should be evaluated.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (holding that errors concerning the evaluation of testimony are appropriate for remand).

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED IN PART** with respect to remand and **DENIED IN PART** with respect to remanding with instructions to credit any particular evidence as true and award benefits.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 30

2.      Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3.      The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.      Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED.**  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file**.

**DATED** January 10, 2022.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 31